**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

PAMELA SMITH, individually and on behalf of
all others similarly situated,

                            Plaintiff,

      v.

HOME DEPOT U.S.A., INC.,

                            Defendant.

Case No. 1:23-cv-00294-LM

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

LEGAL STANDARD ...................................................................................................... 2

ARGUMENT ................................................................................................................... 3

I.     THE FEDERAL DPPA HAS NO BEARING ON THE NHDPA ......................... 3

II.    DEFENDANT'S STATUTORY INTERPRETATION ARGUMENTS
FAIL ..................................................................................................................... 6

    A.    Drivers' Licenses Are "Motor Vehicle Records" Under The
NHDPA .................................................................................................... 6

    B.    Drivers' Licenses Are "Department Records" Under The NHDPA ......... 9

    C.    TRE Is An "Unauthorized Person" Under The NHDPA ....................... 11

III.   PLAINTIFF ADEQUATELY ALLEGES A CLAIM UNDER N.H. RSA
260:14, IX(A) .................................................................................................... 12

IV.   PLAINTIFF ADEQUATELY ALLEGES A CLAIM UNDER N.H. RSA
260:14, IX(B) .................................................................................................... 13

    A.    Defendant "Offered" Plaintiff's Motor Vehicle Records To TRE ......... 13

V.    PLAINTIFF IS "AGGRIEVED" BY DEFENDANT'S VIOLATIONS ............. 15

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ................................................................. 9

*Appeal of Town of Seabrook*,
   163 N.H. 635 (2012) ............................................................................. 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 3, 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 3, 4, 5

*DeVere v. Att'y Gen.*,
   146 N.H. 762 (2001) ..................................................................... passim

*Doe v. Comm'r of New Hampshire Dep't of Health & Hum. Servs.*,
   174 N.H. 239 (2021) ............................................................................. 13

*Donovan v. Digital Equip. Corp.*,
   883 F. Supp. 775 (D.N.H. 1994) ............................................................ 8

*Figueroa v. Taylor*,
   2006 WL 3022966 (S.D.N.Y. Oct. 23, 2006) ...................................... 10

*Foman v. Davis*,
   371 U.S. 178 (1962) .............................................................................. 24

*Fontanez v. Skepple*,
   563 F. App'x 847 (2d Cir. 2014) ..................................................... 9, 10

*Genworth Life Ins. Co. v. New Hampshire Dep't of Ins.*,
   174 N.H. 78 (2021) ............................................................................... 13

*Grajales v. P.R. Ports Auth.*,
   682 F.3d 40 (1st Cir. 2012) ................................................................... 5

*In re Thermo-Fisher Sci., Inc.*,
   160 N.H. 670 (2010) ................................................................... 2, 21, 22

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005) .............................................................................. 23

*Mocek v. Allsaints USA Ltd.*,
   220 F. Supp. 3d 910 (N.D. Ill. 2016) .................................................. 23

*Moulton v. Brookline Rent Control Bd.*,
    385 Mass. 228, 431 N.E.2d 225 (1982) .................................................................................. 19

*Mountain Valley Mall Assocs. v. Municipality of Conway*,
    745 A.2d 481 (N.H. 2000) ......................................................................................................... 19

*O'Brien v. Quad Six, Inc.*,
    219 F. Supp. 2d 933 (N.D. Ill. 2002) ....................................................................................... 11

*Ocasio v. Riverbay Corp.*,
    2007 WL 1771770 (S.D.N.Y. June 19, 2007) ......................................................................... 10

*People v. Williams*,
    16 Cal. 4th 153 (1997) .............................................................................................................. 8

*Petition of Strandell*,
    132 N.H. 110 (1989) ................................................................................................................ 13

*Reno v. Condon*,
    528 U.S. 141 (2000) .................................................................................................................. 9

*Ruivo v. Wells Fargo Bank, N.A.*,
    766 F.3d 87 (1st Cir. 2014) ....................................................................................................... 5

*Russell v. Boston Wyman, Inc.*,
    574 N.E.2d 379 (1991) ............................................................................................................. 20

*Siegler v. Best Buy Co. of Minnesota*,
    519 F. App'x 604 (11th Cir. 2013) ..................................................................................... 6, 10

*State v. Riendeau*,
    999 A.2d 329 (N.H. 2010) ....................................................................................................... 18

*United States v. Ven–Fuel, Inc.*,
    758 F.2d 741 (1st Cir.1985) ..................................................................................................... 19

**STATUTES**

18 U.S.C. § 2721 ............................................................................................................................. 6

N.H. RSA 260:14 .................................................................................................................. passim

N.H. RSA 356:14 ............................................................................................................................ 8

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 3

**REGULATIONS**

N.H. Code Admin. R. Saf-C 5602.01(a) ................................................................................. 12, 13

Plaintiff Pamela Smith ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Home Depot's ("Home Depot" or "Defendant") Motion to Dismiss the Complaint (ECF No. 11).

## **INTRODUCTION**

In her complaint ("Compl.") (ECF No. 1-1) Plaintiff alleges that Defendant violated two sections of the New Hampshire Driver Privacy Act ("NHDPA," the "New Hampshire DPA" or the "Statute"), N.H. RSA 260:14, *et seq.*, by transmitting her driver's license information, including name, address, photograph, and driver identification number, to The Retail Equation ("TRE") when she made returns or other transactions that required her to present her driver's license.  Had Defendant requested Plaintiff's consent to transmit her driver's license information to a third party, TRE, she would have withheld it.  Defendant's conduct is unlawful under N.H. RSA 260:14, IX(a)-(b), and Plaintiff seeks damages under N.H. RSA 260:14, X.

Defendant has moved to dismiss.  *See* Def.'s Mem. Law Supp. Mot. Dismiss (ECF No. 11-1) (hereinafter "MTD").  The MTD makes several arguments, all of which fail.

First, Defendant repeatedly attempts to apply out-of-circuit caselaw interpreting the Federal Drivers Privacy Protection Act ("DPPA") to the NHDPA.  But the NHDPA is substantively more expansive than the Federal DPPA and governs different conduct. Defendant's reading of out-of-circuit interpretations of a separate, non-analogous, and narrower federal statute has no bearing here.

Defendant next advances myriad statutory interpretation arguments – namely (1) that it did not violate subsection IX(a) of the NHNDPA because driver's license information is not a "department record" and TRE is not an "unauthorized" person, and (2) that it did not violate subsection IX(b) because driver's license information is not a "motor vehicle record" and it did

1

not "offer" the information "for sale."   But a plain reading of NHDPA demonstrates that Defendant's proposed readings of the NHDPA are wrong and would lead to absurd results.

Finally, Defendant argues that Plaintiff is not "aggrieved" under N.H. RSA 260:14, X because Plaintiff does not allege monetary loss from its conduct.   This argument improperly attempts to apply Article III standing requirements to a case that Defendant removed from New Hampshire state court.   To be "aggrieved," all Plaintiff needs to allege is that she suffered "from an infringement or denial of legal rights."   *In re Thermo-Fisher Sci., Inc.*, 160 N.H. 670, 672–73 (2010).   She has done so.

Defendant's Motion should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff alleges that Home Depot requires its customers to share their personal information written on their driver's license in order to conduct certain transactions.   *See* Complaint (ECF No. 1-1) ("Compl.") ¶ 2.   Defendant, however, does not keep that information to itself — instead Defendant transmits the personal information to The Retail Equation ("TRE").   *Id.* ¶¶ 4, 10, 52, 67; *see also* MTD at 2 (admitting to same).   The personal information includes photographs or computerized images, social security numbers, driver identification numbers, names, addresses, telephone numbers, and/or medical or disability information.   Compl. ¶¶ 2, 8, 9, 30, 48, 40, 52, 55, 63, 65.   Plaintiff was unaware that Defendant transmitted the personal information to TRE and never consented to the transmission.   *Id.* ¶¶ 5, 11, 54, 69.   Had Plaintiff had been asked for consent she would have withheld it.   *Id.* ¶¶ 56, 71.

## LEGAL STANDARD

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  Thus, the Court must "examine whether the operative complaint states a claim for which relief can be granted, construing the well-pleaded facts in the light most favorable to the plaintiff, accepting their truth and drawing all reasonable inferences in plaintiff's favor." *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 90 (1st Cir. 2014) (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).

## ARGUMENT

## I.    THE FEDERAL DPPA HAS NO BEARING ON THE NHDPA

Defendant repeatedly attempts to apply cases interpreting the Federal DPPA, 18 U.S.C. § 2721 *et seq*, to this case.  *See* MTD at 5-7, 10-12.  But the NHDPA is completely different than the Federal DPPA, contains different language governing different (and broader) conduct, and is the result of a different and separate legislative history.  As such, any interpretation and case law regarding the Federal DPPA has no bearing on the New Hampshire DPA.

As an initial matter, the Federal DPPA is substantively different than the New Hampshire DPA. Defendant broadly asserts that the New Hampshire DPA "is like its federal counterpart," the DPPA, and thus "only applies to the improper sale or disclosure by a state motor vehicle agency." MTD at 1. But Defendant cites no authority for this assertion. This is for good reason: the New Hampshire DPA is not simply a mirror image of the Federal DPPA — it is completely different. Crucially, the Federal DPPA applies only to "[a] State department of motor vehicles, and any officer, employee, or contractor thereof" and does not regulate the activity of any other person. 18 U.S.C. § 2721; *Siegler v. Best Buy Co. of Minnesota*, 519 F. App'x 604, 605 (11th Cir. 2013) ("the [DPPA] is concerned only with information disclosed, in the first instance, by state DMVs"). The New Hampshire DPA, on the contrary, goes far beyond regulating the state DMV — the New Hampshire DPA restricts what a "person" can do with department and motor vehicle "records." N.H. RSA 260:14, IX(a)-(b). Also, Justice Lynn recognized that "[a] comparison of the federal and state statutes shows that the General Court chose to provide somewhat greater protection to New Hampshire citizens than the federal statute demands." *DeVere v. Att'y Gen.*, 146 N.H. 762, 772 (2001) (Lynn, J., dissenting). Justice Lynn further recognized that "[t]he DPA provides **greater** privacy protection than the DPPA in three principal respects … the DPA appears to prohibit the disclosure of a person's photograph, computerized image and social security number even if consent has been given, … the DPA allows disclosures … only to 'a banking or similar institution' … [and] the DPA contains a broad "opt-out" provision." *Id.* at 772-73 (emphasis added).

Cases interpreting the Federal DPPA have no bearing on interpreting the non-analogous New Hampshire DPA. It is well established that decisions of federal court interpreting federal law are not binding on state courts. *See, e.g.*, *People v. Williams*, 16 Cal. 4th 153, 190 (1997), as

modified (Sept. 24, 1997); *see also DeVere,* 146 N.H. at 765 ("In construing [the NHDPA], we begin with an examination of the statutory language" with no consideration given to caselaw interpreting the DPPA.).  Moreover, unlike other New Hampshire statutes, the NHDPA does not contain any language inviting "courts to interpret its provisions in accordance with federal law." *See Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1994); *cf.* N.H. RSA 356:14 (1984) ("In any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws.").  Indeed, a plain reading of the NHDPA indicates that it was enacted to **<u>expand</u>** privacy protections to New Hampshire residents relative to the DPPA.  *See id.* at 772 ("While the DPPA provides the minimum level of privacy protection which States are required to afford personal information contained in motor vehicle records, States are free to afford such information greater protection.  A comparison of the federal and state statutes shows that the General Court chose to provide somewhat greater protection to New Hampshire citizens than the federal statute demands.").

Defendant expends multiple pages in its memorandum citing a slew of Federal cases interpreting the Federal DPPA, yet Defendant provides no reason that these cases should be applied in interpreting the NHDPA beyond generally pointing out that they both discuss drivers' licenses and privacy.  *See* MTD at 5-6 (citing *Reno v. Condon*, 528 U.S. 141 (2000) and *Fontanez v. Skepple*, 563 F. App'x 847 (2d Cir. 2014)); *id.* at 10-13 (citing *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019), *Fontanez v. Skepple*, 563 F. App'x 847 (2d Cir. 2014), *Figueroa v. Taylor*, No. 06 CIV. 3676 (PAC) (KNF), 2006 WL 3022966 (S.D.N.Y. Oct. 23, 2006), *Ocasio v. Riverbay Corp.*, No. 06 CIV. 6455 (PAC) (KNF), 2007 WL 1771770 (S.D.N.Y. June 19, 2007), *Siegler v. Best Buy Co. of Minnesota, Inc.*, 519 F. App'x 604 (11th Cir. 2013), and *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933, 934 (N.D. Ill. 2002)).  These

cases apply solely to the Federal DPPA, do not reference or discuss the NHDPA whatsoever, and are thus irrelevant to the instant case.

While the Supreme Court of New Hampshire found that "the State legislature enacted the [New Hampshire DPA] to comply with the [Federal] DPPA," *DeVere*, 146 N.H. at 765, the Court has never stated that any limits and case law applicable to the Federal DPPA somehow also apply to the New Hampshire DPA. In fact, the opposite is true: The Court went on to make an **independent and de novo** interpretation of the New Hampshire DPA, and, in doing so, did not analyze **any** caselaw relating to or language from the Federal DPPA whatsoever. *See id.* at 765-69.

In sum, the case law Defendant cites interpreting the Federal DPPA should be disregarded. Rather, this court should follow the Supreme Court of New Hampshire's guidance, and analyze the NHDPA on purely statutory interpretation grounds. *See id*. at 765-69.

## II. DEFENDANT'S STATUTORY INTERPRETATION ARGUMENTS FAIL

Defendant repeatedly argues that Plaintiff's Driver's License is neither a "department record" nor a "motor vehicle record" under the NHDPA. *See* MTD at 8-10. Similarly, Defendant argues that TRE is not an "unauthorized person" under the NHDPA. *See id.* at 13-15. Defendant is wrong on all counts.

### A. Drivers' Licenses Are "Motor Vehicle Records" Under The NHDPA

Defendant attempts to argue that the licenses are not "motor vehicle records." (MTD at 9). That interpretation is absurd. The term "motor vehicle records," as Defendant recognizes, is "defined in the NHDPA as 'all applications, reports required by law, registrations, histories, certificates, and licenses issued or revoked by the department relative to motor vehicles and the information, including personal information, contained in them[.]" MTD at 9 (quoting N.H. RSA 260:14, I(a)). Defendant, incredibly, still argues that "driver's licenses are not part of that

definition," MTD at 9, but this is obviously incorrect.  The Statute is clear and unambiguous. Clearly, driver's licenses are "licenses issued or revoked by the department relative to motor vehicles" and the Complaint plainly alleges that Defendant illegally disclosed "the information, including personal information, contained in them."  *See* N.H. RSA 260:14, I(a); *see also* Compl. ¶ 52 ("In contravention of N.H. RSA 260:14, IX(a), Defendant knowingly discloses the information (including, but not limited to, customers' photographs or computerized images, social security numbers, driver identification numbers, names, addresses, telephone numbers, and/or medical or disability information) from customers' respective driver's licenses (acquired during non-receipted returns, in-store credit transactions, and/or other DLTs), which constitute department records, under the DPA, to a person or persons known by Defendant to be an unauthorized person — including The Retail Equation.").

Defendant argues next that the "New Hampshire implementing regulations make clear that '[m]otor vehicle records are maintained at the Department of Safety, Division of Motor Vehicles.'"  MTD at 9 (citing N.H. Code Admin. R. Saf-C 5602.01(a)).  This is clearly mistaken for three reasons.

<u>First</u>, the distinction raised by Defendant is a moot point.  Defendant argues that Plaintiff "does not allege (nor could she) that her personal driver's license is somehow maintained at the Department of Safety, or that Home Depot obtained her driver's license or any records from that Department."  But that is irrelevant because, again, the definition of "motor vehicle records" in the NHDPA contains not only Plaintiff's personal license, but the "the information, including personal information, contained in [the licenses]."  *See* N.H. RSA 260:14, I(a).  That information

7

**is** maintained at the Department of Safety, and thus the fact that the Department does not simultaneously physically possess Plaintiff's personal driver's license is irrelevant.[1]

Second, the implementing regulation cited by Defendant applies only to the process of **obtaining** motor vehicle records directly from the Department of Safety, as required by the Statute. *See* N.H. RSA 260:14, VII ("Motor vehicle records relating to a person may be made available … in such form and manner as the department prescribes."); N.H. RSA 260:14, XII ("The commissioner of safety shall adopt rules to implement this section."); *see also* N.H. Code Admin. R. Saf-C 5602.01(b) ("[m]ail requests" instructions); s*ee also generally id.* 5602.01(c) ("in person" requests); 5602 (providing instructions for "Procedures for Obtaining Motor Vehicle Records").

Third, it is well established that a court "will not defer to an agency's statutory interpretation if it clearly conflicts with the statutory language or if it is plainly incorrect." *Genworth Life Ins. Co. v. New Hampshire Dep't of Ins.*, 174 N.H. 78, 83 (2021) (citing *Appeal of Town of Seabrook*, 163 N.H. 635, 644 (2012)) and "[a]dministrative rules may not add to, detract from, or modify the statute which they are intended to implement." *Doe v. Comm'r of New Hampshire Dep't of Health & Hum. Servs.*, 174 N.H. 239, 254 (2021) (citing *Petition of Strandell*, 132 N.H. 110, 119 (1989). The statutory definition for "motor vehicle records" included in the NHDPA clearly and unambiguously includes all "information … contained in" a "license issued" by the Department of Safety. N.H. RSA 260:14, I(a). Plaintiff has therefore properly pled that Defendant offered "motor vehicle records" to TRE.

---

[1] Defendant does not appear to contest that drivers' licenses are issued by the New Hampshire Department of Safety. In any event, they are.

**B.    Drivers' Licenses Are "Department Records" Under The NHDPA**

Defendant argues that Plaintiff does not plausibly allege that it violates N.H. RSA 260:14, IX(a), because the driver's license information it "discloses" to TRE is not "information from a department record."  MTD at 8-10.  That argument is likewise absurd.  Under the only logical reading of the statute, the Legislature intended "department record" to be a **<u>broader</u>** term that is **<u>inclusive</u>** of the term "motor vehicle records."  The term "department records" includes driver's license information.

Defendant argues that "the New Hampshire legislature must have meant something different when it distinguished between the two types of records and specifically used the term 'department record' only in Section IX(a)."  MTD at 10.  Plaintiff does not disagree.  But where Defendant is wrong is that this does not necessarily mean that driver's license information is not included in the term "department records."  The statute should be read that "department records" include **<u>any</u>** "information" collected by the New Hampshire Department of Safety, **<u>including</u>** individual license information and other aggregated information, whereas "motor vehicle records" **<u>only</u>** include what is defined in the statute: "all applications, reports required by law, registrations, histories, certificates, and licenses issued or revoked by the department relative to motor vehicles and the information, including personal information, contained in them."  N.H. RSA 260:14, I(a).  To put it more simply:  All "motor vehicle records" are "department records," but not all "department records" are "motor vehicle records."

Unlike Defendant's half-baked interpretation, Plaintiff's interpretation makes sense in the context of the NHDPA.  Under Section IX of the statute, "[a] person is guilty of a class B **<u>felony</u>** if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale **<u>motor vehicle records</u>** to another person in violation of this section," while he or she is only "guilty of a **<u>misdemeanor</u>** if such person knowingly discloses information from a **<u>department record</u>** to a

person known by such person to be an unauthorized person."  N.H. RSA 260:14, IX (a)-(b).
Adapting Defendant's proposed interpretation, where "department record" is a narrower term
than "motor vehicle record," it would be a **misdemeanor** to disclose information only if said
information is from "an authentic official copy of a document with a legally designated officer,"
while it would also be a **felony** to disclose records from a wider universe of sources **inclusive** of
that narrower definition.  That would render the misdemeanor category meaningless, and thus
cannot possibly have been the intent of the Legislature.  The Court should disregard this
proposed interpretation.  *See*, *e.g.*, *DeVere*, 146 N.H. at 768 ("When examining statutory
language, however, we do not merely look at isolated phrases, but construe all parts of a statute
together to effectuate its overall purpose and to avoid an absurd result.")

Further, despite Defendant's protestations, the plain and ordinary meaning of the term
"department record" plainly includes information from a driver's license.  As Defendant points
out in its briefing, "department" means the New Hampshire Department of Safety as is evident
from the statutory construction, legislative history, regulatory construction, and plain dictionary
definition.  MTD at 8.  Defendant, however, argues that "record" means **only** "an authentic
official copy of a document deposited with a legally designated officer."  *Id.* (citing MERRIAM
WEBSTER'S DICTIONARY, http://www.merriam-webster.com, (2 Jan. 2004)).  This narrow
construction is not warranted.  A "record" is more properly defined, in the legal sense, as
"information that is inscribed on a tangible medium or that, having been stored in an electronic
or other medium, is retrievable in perceivable form."  *Record*, *Black's Law Dictionary* (11th ed.
2019); see also *Record*, *Black's Law Dictionary* (6th ed. 1990) ("A written account of some act,
court proceeding, transaction, or instrument, drawn up, under authority of law, by a proper
officer, and designed to remain as a memorial or permanent evidence of the matters to which it

relates").  Under these sensible definitions of "record," the statute covers "information" that is "from" a driver's license — a "tangible medium" that is "drawn up, under authority of law, by a proper officer and designed to remain as a memorial" of a driver's eligibility to operate a motor vehicle.

### C.    TRE Is An "Unauthorized Person" Under The NHDPA

Defendant argues that Plaintiff "chose to request non-receipted returns, provided her driver's license information to Home Depot as part of that process, and thereby authorized and agreed to doing business with Home Depot and its service providers."  MTD at 14.  That is wrong.  As Plaintiff has alleged, "Plaintiff and Class members were never informed by Defendant (and thus never knew) that the information from their respective driver's licenses would be disclosed by Defendant, including to TRE."  Compl. ¶ 54.  "Plaintiff and Class members thus never consented to Defendant's having disclosed the information from their respective driver's licenses, including to TRE."  *Id.*  Whether Plaintiff voluntarily gave her license to Home Depot is irrelevant, as TRE is the "unauthorized person" at issue here. Plaintiff's provision of her driver's license info **to Defendant** is not a blanket authorization for Defendant to do whatever it wants with the information it obtains.  Defendant knew that Plaintiff never had knowledge of or consented to having her information shared with TRE.  *See* Compl. ¶¶ 54-55.

TRE is clearly an "unauthorized person" under the statute.  The NHDPA provides a list of "authorized" recipients that may "sell, rent, transfer, or make the information available to another person for the same use."  N.H. RSA 260:14, VI(a).  That list is limited to: a "legitimate business in connection with matters of motor vehicle or driver safety and theft [etc.]"; "use by a legitimate business in research activities, and for use by a legitimate business in statistical reports"; "bulk distribution for surveys, marketing or solicitations"; "use with respect to a request

for a named person's motor vehicle records by a public utility"; and "use by life insurance companies authorized to write life insurance policies." N.H. RSA 260:14 V(a)(1), (4), (8), (9), (10).[2] None of these descriptions applies to TRE, which receives the driver's license information to "recommend for retailers to approve or deny transactions" rather than for any purpose deemed "authorized" by the statute. *See* Compl. ¶ 2 n. 1.

## III. PLAINTIFF ADEQUATELY ALLEGES A CLAIM UNDER N.H. RSA 260:14, IX(A)

Under the NHDPA, it is a misdemeanor for a person to "disclose information from a department record to a person known by such person to be an unauthorized person." N.H. RSA 260:14, IX(a). As outlined *supra*, Driver's license information is "information from a department record" and TRE is an "unauthorized" person.

Defendant argues that because Plaintiff "voluntarily provided her personal information and driver's license" she cannot "allege that Home Depot *knew* it was disclosing information to a person it believed to be unauthorized." MTD at 14-15. That is a false equivalency. Defendant does not, and cannot, demonstrate how Plaintiff's voluntarily providing a driver's license to Home Depot, without anything else, means that Home Depot somehow became authorized to send her information to third parties in violation of the NHDPA. Here, Plaintiff specifically alleges (1) that she was **not** informed that her information was shared with TRE and (2) that Home Depot **knew** that TRE is not one of the enumerated "authorized" recipients under the statute. Compl. ¶¶ 54-55. To the extent Home Depot argues it did not *know* that TRE was unauthorized under the NHDPA, "it is well-established that ignorance of the law is no excuse."

---

[2] Under the NHDPA, a "Legitimate Business" is defined as "a business which is registered in New Hampshire and which receives compensation in connection with matters of motor vehicle or driver safety or theft, motor vehicle emissions, and motor vehicle market research activities, including survey research." N.H. RSA 260:14, IX(d). This definition clearly does not include TRE.

*State v. Riendeau*, 999 A.2d 329, 336 (N.H. 2010) (cleaned up).[3] Thus, Plaintiff adequately alleges that Defendant violated N.H. RSA 260:14, IX(a) by "disclos[ing] information from a department record to a person known by such person to be an unauthorized person" each and every time it shared her department records with TRE.

## IV.    PLAINTIFF ADEQUATELY ALLEGES A CLAIM UNDER N.H. RSA 260:14, IX(B)

Likewise, Plaintiff adequately alleges that Defendant violated N.H. RSA 260:14, IX(b). The statute makes it a class B felony if a person "in the course of business … knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." *Id.* Plaintiff properly alleges that Defendant "offers" driver's license information to TRE. Driver's license information is included in the definition for "motor vehicle records" and providing that information to TRE, even if not in exchange for money, is still "offering" the information.

### A.    Defendant "Offered" Plaintiff's Motor Vehicle Records To TRE

N.H. RSA 260:14, IX(b) makes it a class B felony if a person "in the course of business … knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." Defendant contends that subsection IX(b) "is not concerned with the *disclosure* of information but rather the provision of motor vehicle records to another for monetary gain" and that subsection IX(b) "is tied to the sale or rental of motor vehicle records for money, which Plaintiff does not (nor could she) allege occurred in this case." MTD at 15-16.

---

[3] Nor would ignorance of the NHDPA be believable in this instance. *See* Compl. ¶ 35 ("[O]ver twenty years ago, the New Hampshire Department of Safety issued a cease-and-desist letter to Defendant for similar conduct. *See* Compl. Ex. A ("Home Depot has a return policy that includes the retaining and storing of customer personal information obtained from a New Hampshire driver's license for the purpose of tracking merchandise and preventing a customer from continuously getting store credits on the same merchandise. ... The Department is of the position that Home Depot's request for the personal information of a New Hampshire licensed driver is not a recognized exception under N.H. RSA 260:14, III, IV or V and therefore this letter serves as notice to cease and desist your current practice.").

But Defendant is wrong, and a simple statutory analysis disproves this. The NHDPA prohibits a person from "offering" a motor vehicle record to another **even if it not in exchange for monetary gain**.

First, the term "offer," by itself, does not require that said offer be done for monetary gain. "Offer" is defined as "[t]he act or an instance of presenting something for acceptance; specif., a statement that one is willing to do something for another person or to give that person something." *Offer*, *Black's Law Dictionary* (11th ed. 2019); *see also Offer*, *Black's Law Dictionary* (6th ed. 1990) ("To bring to or before; to present for acceptance or rejection; to hold out or proffer; to make a proposal to; to exhibit something that may be taken or received or not."). Defendant's behavior falls under this definition: Defendant "offered" Plaintiff and class members' motor vehicle records to TRE, when it retained them as a "third-party service provider," then followed through on that offer by sending the information to TRE, violating the NHDPA. *See* MTD at 16.

Second, while Defendant argues "Section IX(b) is tied to the sale or rental of motor vehicle records for money," MTD at 16, in the context of the NHDPA, the word "offers" only means "offers," not "offers for sale." The "last antecedent rule" combined with Oxford comma placed after the word "offer," shows that the modifying phrase "for sale" applies only to the term "exposes." New Hampshire courts have held that the "last antecedent rule" is an "established rule of statutory construction." *Mountain Valley Mall Assocs. v. Municipality of Conway*, 745 A.2d 481, 488 (N.H. 2000) (citing *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir.1985)). Specifically, it "is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Id.* (citing *Moulton v.*

*Brookline Rent Control Bd.*, 385 Mass. 228, 431 N.E.2d 225, 227 (1982)).    "Therefore, qualifying phrases are to be applied to the words or phrases immediately preceding and are not to be construed as extending to others more remote."    *Id.*    (citing *Russell v. Boston Wyman, Inc.*, 410 Mass. 1005, 574 N.E.2d 379, 380 (1991)).    This is especially true given that the legislature placed a comma after the word "offer," the comma indicates that the word "offer" stands by itself.    *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 161 (2012) ("Punctuation in a legal text will rarely change the meaning of a word, but it will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part.").    Moreover, it would make no sense that "for sale" modifies each word in the series:  Can one "sell for sale" or "rent for sale"?  The term "for sale," therefore only modifies the word "exposes" and the term "offers" stands on its own.    *See* N.H. Rev. Stat. Ann. § 260:14, IX (b) ("A person is guilty of a class B felony if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section.")

Thus, the statute therefore clearly and unambiguously prohibits a person from "offering" a "motor vehicle record" regardless of whether they were compensated—the mere presentment of the information is unlawful.    Plaintiff has thus properly alleged that Defendant has "offered" her motor vehicle records to TRE, in violation of Section IX(b).    Compl. ¶ 3-5, 11, 69.

## V.    PLAINTIFF IS "AGGRIEVED" BY DEFENDANT'S VIOLATIONS

Defendant next argues that Plaintiff lacks statutory standing because she "fails to explain how she suffered any damages or harm by Home Depot accepting this information and sharing it with TRE."    But Defendant applies an incorrect standard and is wrong regardless.    Plaintiff properly alleges that she was "aggrieved" by Defendant's conduct, conferring statutory standing.  N.H. RSA 260:14, X provides that "any person aggrieved by a violation of this section may

bring a civil action under this section." Plaintiff does not need to allege monetary harm—it is enough to allege "an infringement or denial of legal rights." *In re Thermo-Fisher Sci., Inc.*, 160 N.H. 670, 672–73.

To succeed on an action brought under N.H. RSA 260:14, X, Plaintiff need not allege that she incurred monetary harm. Indeed, the NHDPA provides for statutory damages as a **minimum recovery**, even in the absence of actual damages. *See* N.H. RSA 260:14, X ("[A]ny person aggrieved by a violation of this section may bring a civil action under this section and, if successful, **shall be awarded the greater of actual damages or liquidated damages of $2,500 for each violation**; reasonable attorneys' fees and other litigation costs reasonably incurred; and such other equitable relief as the court determines to be appropriate.") (emphasis added).

Defendant argues that Plaintiff "fails to allege facts showing that she 'suffer[ed] loss or injury' and therefore she is not an aggrieved person." MTD at 17. Defendant cites *Black's Law Dictionary*, eleventh edition, as "defining 'aggrieved' to mean '[h]aving suffered loss or injury; damnified; Injured.'" MTD at 18. But this definition does not appear in the eleventh addition of *Black's Law Dictionary*, which actually defines "aggrieved" as: "(Of a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights." *Aggrieved*, *Black's Law Dictionary* (11th ed. 2019).[4] Similarly, *Black's Law Dictionary* defines "person aggrieved" simply as "A party entitled to a remedy; esp., a party whose personal,

---

[4] The definition quoted by Defendant appears to be from prior, outdated editions *of Black's Law Dictionary*. Upon review of historical versions of *Black's Law Dictionary* on Westlaw, it appears to have last been used in the sixth edition. *See Aggrieved, Black's Law Dictionary* (6th ed. 1990) ("Having suffered loss or injury; damnified; injured."). Notably, the sixth edition defines "Aggrieved Person" as "Aggrieved Party" (*see Aggrieved Person, Black's Law Dictionary* (6th ed. 1990)) which is "[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversely affected by a decree or judgment," which likewise supports Plaintiff's reading of the NHDPA. *Aggrieved Party, Black's Law Dictionary* (6th ed. 1990) (emphasis added); *see also id.* (noting that the "word 'aggrieved' refers to a substantial grievance, a **denial of some personal, … right**, or the imposition upon a party of a burden or obligation") (emphasis added).

pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment."  *See Party*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added) (defining "aggrieved party…[a]lso termed party aggrieved; person aggrieved").  These definitions are plainly on all fours with Plaintiff's allegations.  Plaintiff has alleged an invasion and infringement of her legal rights under the NHDPA through Defendant's violation of the same, and is thus "aggrieved" for purposes of statutory standing.

Likewise, the New Hampshire Supreme Court has held that "the plain and ordinary meaning of the term … 'aggrieved' is 'having a grievance; specif[ically]: suffering from an infringement or denial of legal rights.'"  *In re Thermo-Fisher Sci., Inc.*, 160 N.H. 670, 672–73 (2010) (citing *Webster's Third New International Dictionary* 41 (unabridged ed. 2002)).  The court went on to hold that a "person aggrieved" under New Hampshire tax statutes "may be anyone who has allegedly suffered by the disproportionate assessment of taxes."  *Id.*  Here, Plaintiff alleges that Defendant took Plaintiff protected driver's license information and, without Plaintiff's consent, supplied it TRE.  Compl. ¶¶ 4-6, 9-11, 30-36, 50-55, 65-70.  The very acts of offering and disclosing Plaintiff's protected department information and motor vehicle record information to TRE violates the NHDPA, and consequently violates Plaintiff's rights under the NHDPA.  That is sufficient for Plaintiff to be "aggrieved."

Defendant next argues that "even assuming this is a recognized privacy right in New Hampshire, Plaintiff does not explain how she lost the right to control or use her personal information."  MTD at 19.  But New Hampshire provides a constitutional right to privacy, which Defendant does not challenge.  N.H. Const. art. 2-b.  But more fundamentally, Plaintiff does not need to "explain how she lost the right to control or use her personal information" because that is not a requirement for standing here.  Plaintiff properly alleges that she never knew that her

17

information was disclosed or offered to TRE and she did not consent to Defendant disclosing or offering the same – to TRE or anybody else.  Compl. ¶¶ 54-56, 69-71.  Yet Defendant **did** disclose and offer Plaintiff's information.  That is how her rights were violated.

Defendant next cites a string of cases where courts found no Article III standing in data breach cases involving personal identifying information ("PII").  MTC at 19-21.  But this misses the point.  Defendant is not challenging Article III standing and Article III standing is irrelevant to determining who is "aggrieved" under the Statute - a state law statutory standing inquiry.  Indeed, should the Court dismiss this case on solely Article III grounds, Defendant is arguably subject to sanctions, because it is Defendant who removed this case to Federal Court.  *See*, *e.g.*, *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914–15 (N.D. Ill. 2016) ("In short, it should have been obvious to defendant, based on well-settled law, that with no party asking for the merits of plaintiff's claim to be decided in federal court, and both sides arguing against federal jurisdiction, the only possible outcome was for the case to end up right back where it started: in state court.  Under these circumstances, I have no trouble concluding that defendant lacked an 'objectively reasonable basis for seeking removal.'  Accordingly, plaintiff is entitled to recover her attorneys' fees incurred as a result of removal.") (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

Finally, Plaintiff is not required to establish a monetary value to the information shared.  Defendant violated Plaintiff's right to privacy both under the New Hampshire Constitution and, as outlined *supra*, that is enough to confer statutory standing under the NHDPA.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion should be denied in its entirety. To the extent the Court grants any aspect of Defendant's Motion, Plaintiffs should be permitted leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely given).


Dated: August 3, 2023                          Respectfully submitted,

                                               /s/ Matthew A. Girardi
                                                  Matthew A. Girardi

                                               **BURSOR & FISHER, P.A.**
                                               Matthew A. Girardi (PHV), NY Bar #5857057
                                               Philip L. Fraietta (PHV), NY Bar #5297825
                                               1330 Avenue of the Americas
                                               New York, NY 10019
                                               (646) 837-7150
                                               mgirardi@bursor.com
                                               pfraietta@bursor.com


                                               **DOUGLAS, LEONARD & GARVEY, P.C.**
                                               Benjamin T. King, NH Bar #12888
                                               14 South Street, Suite 5
                                               Concord, NH 03301
                                               (603) 224-1988
                                               benjamin@nhlawoffice.com

                                               *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing document was served this date upon all counsel of record via the ECF filing system.

<div align="right">

/s/ Matthew A. Girardi

Matthew A. Girardi

</div>