UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Pamela Smith,
individually and on behalf of all
others similarly situated

     v.                                      Civil No. 23-cv-294-LM
                                            Opinion No. 2023 DNH 152 P

Home Depot U.S.A., Inc.

**O R D E R**

     Pamela Smith brings this putative class action against Home Depot U.S.A., Inc. ("Home Depot") alleging that Home Depot violated the New Hampshire Driver Privacy Act ("Driver Privacy Act"), RSA 260:14, by transmitting information from Smith's driver's license to a third-party without her consent. Presently before the court is Home Depot's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See doc. no. 11. For the following reasons, the court grants Home Depot's motion.

**STANDARD OF REVIEW**

     Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## BACKGROUND

While Smith's complaint contains limited factual allegations, the court draws the following facts from her complaint. See doc. no. 5 at 2. Within the last three years, Smith has made multiple returns to a Home Depot store in Concord, New Hampshire. Smith did not present a receipt for her items at the time she made these returns. When customers make non-receipted returns, Home Depot provides them with store credit via stored value cards, which are similar to gift cards. In addition to making multiple non-receipted returns within the last three years, Smith also purchased items using in-store credit.

When making her non-receipted returns or purchasing items using in-store credit, Home Depot required Smith to present her driver's license. Home Depot then transmitted information on Smith's driver's license to an entity known as "The Retail Equation." According to Smith's complaint, The Retail Equation provides software used by retailers to analyze customers' shopping habits in order to determine whether a particular transaction may be fraudulent. Smith alleges that she was not aware that Home Depot would transmit the information on her driver's license to a third-party in order to process her transactions.

Smith brought the instant putative class action in New Hampshire Superior Court on or about April 10, 2023. See id. at 2, 23. Her complaint alleges two claims

against Home Depot, both of which arise under the Driver Privacy Act. Home Depot removed Smith's action to this court on or about May 25, 2023, pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

## DISCUSSION

Smith's first claim alleges that Home Depot violated RSA 260:14, IX(a) by disclosing information on her driver's license to The Retail Equation. That statute provides in pertinent part:

> A person is guilty of a misdemeanor if such person knowingly discloses information from a department record to a person known by such person to be an unauthorized person . . . . Each such unauthorized disclosure . . . shall be considered a separate offense.

Her second claim alleges that Home Depot violated RSA 260:14, IX(b) by engaging in this same conduct. That statute provides that a "person is guilty of a class B felony if, in the course of business, such person knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." Although both RSA 260:14, IX(a) and (b) speak in terms of criminal liability, another provision of the statute states that "any person aggrieved by a violation of this section may bring a civil action." RSA 260:14, X. A successful plaintiff may obtain the greater of actual damages or statutory damages of $2,500 "for each violation," as well as attorney fees and costs. Id.

Home Depot now moves to dismiss both counts. With respect to Count I, Home Depot argues that Smith fails to state a claim because the clause of RSA

3

260:14, IX(a) upon which Smith relies only prohibits the disclosure of "department record[s]." RSA 260:14, IX(a). Home Depot contends, inter alia, that Smith's driver's license is not a "department record" within the meaning of RSA 260:14, IX(a). With respect to Count II, Home Depot argues that Smith fails to state a claim because RSA 260:14, IX(b) provides that it is unlawful if a person "sells, rents, offers, or exposes for sale motor vehicle records." RSA 260:14, IX(b). Home Depot submits that (1) Smith's driver's license is not a "motor vehicle record," but (2) even if it is, Smith failed to plausibly allege that Home Depot sold, rented, offered, or exposed for sale her driver's license.

Home Depot's motion requires the court to engage in statutory interpretation. Federal courts applying state law "look to the pronouncements of a state's highest court in order to discern the contours of that state's law." Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 7 (1st Cir. 2022) (quoting González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)). Here, the New Hampshire Supreme Court has not ruled on the precise issues presented. Therefore, the court "must anticipate how the [New Hampshire Supreme Court] would rule if it were deciding the questions presented." Id. This inquiry requires the court to "look to the 'pertinent statutory language and analogous decisions of the [New Hampshire] Supreme Court.'" Id. (quoting González Figueroa, 568 F.3d at 318).

When interpreting statutes, the New Hampshire Supreme Court begins with the statutory language, and construes "that language according to its plain and ordinary meaning." Brady v. Sumski, --- N.H. ---, 2023 WL 5281156, at *2 (2023). The Court will "interpret the statute as written and will not consider what the

legislature might have said or add language that the legislature did not see fit to include." Id. As the Court examines the statute, it will not "merely look at isolated words or phrases," but will instead "consider the statute as a whole." DeVere v. Att'y Gen., 146 N.H. 762, 765 (2001). This enables the Court to "better . . . discern the legislature's intent, and therefore better . . . understand the statutory language 'in light of the policy sought to be advanced by the entire statutory scheme.'" Id. (quoting Appeal of Mascoma Valley Reg. Sch. Dist., 141 N.H. 98, 100 (1996)).

Here, the court will begin its analysis by conducting an overview of the Driver Privacy Act as a whole, which will enable it to better understand the meaning of subparagraphs IX(a) and (b). Then, the court will consider whether Smith states a claim for violation of subparagraph IX(a), before analyzing whether she states a claim under subparagraph IX(b).

I.  Overview of RSA 260:14

The New Hampshire legislature enacted the Driver Privacy Act in 1996 in order to comply with the federal Driver's Privacy Protection Act ("DPPA"). See DeVere, 146 N.H. at 765. "In enacting the federal legislation, Congress was concerned that many States were selling information contained in motor vehicle records to individuals and businesses producing 'significant revenue for the States.'" Id. at 764 (quoting Reno v. Condon, 528 U.S. 141, 143-44 (2000)). DPPA, enacted in 1994, "regulates the authority of state motor vehicle departments to disclose information contained in their records." Id. Subject to certain exceptions, DPPA generally prohibits state motor vehicle departments from disseminating

information regarding a particular individual without that individual's consent. See Reno, 528 U.S. at 145. It subjects "both private parties and state agencies that violate the statute to substantial fines." DeVere, 146 N.H. at 765 (citing 18 U.S.C. § 2723(b)).

The Driver Privacy Act "purports to conform with the DPPA by setting forth a general rule that motor vehicle 'records shall not be public records or open to the inspection of any person.'" Id. (quoting RSA 260:14, II(a)). Although the Act provides that "motor vehicle records shall be kept by the department [of safety][1] at its office," and are generally nonpublic records, RSA 260:14, II(a), it does permit the department to disclose motor vehicle records in certain instances. For example, paragraph II-a permits the release of motor vehicle records created to document an accident or collision involving government-owned vehicles pursuant to New Hampshire's "Right to Know" Law, RSA chapter 91-A. See RSA 260:14, II-a. Paragraph III-a deals with the circumstances under which motor vehicle records may be released for the limited purpose of toll collection to the New Hampshire department of transportation (or its contractors). See RSA 260:14, III-a; see also RSA 260:14, III-c (regarding the release of motor vehicle records to other states for the purpose of toll collection).

By way of further example, paragraph IV(a) permits the department to disclose motor vehicle records to motor vehicle manufacturers for certain "strictly

---

[1] The Driver Privacy Act's implementing regulations define "department" as "the New Hampshire department of safety." N.H. Code Admin. R. Saf-C 5601.04; see RSA 260:14, XII (authorizing the commissioner of safety to adopt implementing regulations).

6

limited" uses enumerated in that section, such as "in connection with matters of motor vehicle or driver safety and theft." RSA 260:14, IV(a)(1); see also RSA 260:14, IV(a)(2). The department may disclose the records only where the person requesting them represents "on a form satisfactory to the department" that the records will be strictly limited to an approved use. RSA 260:14, IV(a)

Paragraph V(a) of the statute provides that "motor vehicle records may be made available" in ten specific scenarios (such as providing notice to the owners of towed vehicles), but, as with paragraph IV(a), only if "the person requesting the records" makes a "representation . . . on a form satisfactory to the department." RSA 260:14, V(a). For a disclosure under paragraph V(a), the representation must satisfy the department "that the use of the record will be strictly limited to" one of the authorized uses set forth in paragraph V(a). Id. Except in limited circumstances, a person who receives personal information contained in motor vehicle records "under the provisions of subparagraph V(a) may not sell, rent, transfer, or make the information available to another person for the same or any other use." RSA 260:14, VI(a).

The statute also provides that individuals can access their own motor vehicle records "upon proof of identity." RSA 260:14, VII. If someone other than the subject of the records seeks them, the department may disclose them only "upon proof, in such form and manner as the department prescribes, that the notarized, written consent of the person who is the subject of the record has been obtained." Id.

The Driver Privacy Act permits persons to opt-out of disclosure and to bar the department from disclosing motor vehicle records regarding that person in many circumstances where disclosure would be otherwise authorized by paragraph V(a). See RSA 260:14, V(b)(1). "A person who so elects shall inform the department in writing, and the department shall not thereafter make the personal information available, nor shall the department make available a list of the persons who have so elected." Id. In addition, "[t]he commissioner may limit the information contained in motor vehicle records released to any person under this section if it is determined by the commissioner that the release of certain personal information is unnecessary," RSA 260:14, XVI, but "[n]othing in this section shall prohibit the department in its discretion from releasing to the public any person's name, age or motor vehicle offenses only," RSA 260:14, VIII.

Against this backdrop, the court considers whether Home Depot's disclosure of information on Smith's driver's license to The Retail Equation violates the Driver Privacy Act.

II.     Smith Fails to State a Claim Under RSA 260:14, IX(a)

As noted, Smith's first claim is brought pursuant to RSA 260:14, IX(a). That paragraph, in conjunction with paragraph X, provides a private right of action when a "person knowingly discloses information from a department record to a person known by such person to be an unauthorized person." Home Depot argues that Smith's driver's license is not a "department record" as that term is used in RSA 260:14, IX(a). The court agrees.

8

While "department record" is not defined in the Driver Privacy Act, the term "department" is defined in its implementing regulations as "the New Hampshire department of safety." N.H. Code Admin. R. Saf-C 5601.4. And, although "record" is not separately defined in the statute or its regulations, the plain meaning of "record" in this context is "an authentic official copy of a document entered in a book or deposited in the keeping of some officer designated by law." Webster's Third New Int'l Dictionary 1898 (Philip Babcock Gove et al. eds., 1993). Taken together, "department record" as that phrase is used in RSA 260:14, IX(a) means authentic copies of documents deposited and kept with of the New Hampshire department of safety.[2]

By providing information within Smith's drivers' license to The Retail Equation, Home Depot did not violate RSA 260:14, IX(a). The information Home Depot disclosed was not within a document obtained from the department of safety.

---

[2] While the Driver Privacy Act did not incorporate the definition of "record" applicable to DPPA, the court notes that its construction is in harmony with the federal definition. See Andrews v. Sirius XM Radio Inc., 932 F.3d 1253, 1260 (9th Cir. 2019) ("Congress intended the DPPA to reflect the Privacy Act of 1974, which defines a 'record' as 'information about an individual that is maintained by an agency.'" (citation and emphasis omitted) (quoting 5 U.S.C. § 552a(a)(4))). Although Smith objects to this court considering federal courts' interpretations of DPPA in construing the Driver Privacy Act, the New Hampshire Supreme Court has often stated that, in construing New Hampshire statutes, it is appropriate to "look to the decisions of other jurisdictions interpreting similar acts for guidance, including federal interpretations of" federal laws. E.g., Clay v. City of Dover, 169 N.H. 681, 686 (2017). "Such similar laws, because they are in pari materia, are interpretively helpful . . . ." Id. (quoting N.H. Right to Life v. Dir., N.H. Charitable Tr. Unit, 169 N.H. 95, 103 (2016)). It is all the more appropriate to consider federal interpretations of DPPA in this case given that New Hampshire passed the Driver Privacy Act in order to comply with DPPA. See DeVere, 146 N.H. at 765.

Rather, Smith freely provided her driver's license to Home Depot in order to complete non-receipted returns and to make purchases using in-store credit, and Home Depot transmitted information within Smith's freely-provided license to The Retail Equation. "A driver's license, though issued by the DMV, becomes the possession of an individual, not the DMV that issued it." Andrews v. Sirius XM Radio Inc., 932 F.3d 1253, 1260 (9th Cir. 2019) (emphasis omitted) (construing DPPA). Because Smith's personal driver's license, which she kept in her own possession, is not a "department record," she fails to state a claim for a violation of RSA 260:14, IX(a).

Smith's arguments to the contrary are not persuasive. She contends that "department record" should be read to "include any 'information' collected by the New Hampshire Department of Safety." Doc. no. 15 at 9 (emphasis omitted). Under Smith's expansive reading, however, RSA 260:14, IX(a) would prohibit the disclosure of information that happens to be contained within a document kept by the department, even when that information is obtained from a document that is not—and never was—in the department's possession. Given that RSA 260:14 viewed as a whole is primarily concerned with circumstances in which it is permissible to disclose information in the department's possession or obtained from the department, Smith's broad reading is not in keeping with the overall purpose of the statutory scheme. The court therefore rejects Smith's interpretation. State v. Stowe, 162 N.H. 464, 474 (2011) (stating that the New Hampshire Supreme Court

will "apply statutes in light of the legislature's intent in enacting them and the policy sought to be advanced by the entire statutory scheme").[3]

For these reasons, the court concludes that Smith fails to state a claim under RSA 260:14, IX(a).[4] Count I of her complaint is therefore dismissed.

III. <u>Smith Fails to State a Claim Under RSA 260:14, IX(b)</u>

Smith's second claim is brought under RSA 260:14, IX(b). A private right of action exists under that paragraph, in conjunction with paragraph X, when a person, "in the course of business, . . . knowingly sells, rents, offers, or exposes for sale motor vehicle records to another person in violation of this section." Home Depot contends that Smith's license is not a "motor vehicle record." In the alternative, Home Depot argues that Smith fails to plausibly allege that Home Depot sold, rented, offered, or exposed her license for sale.

In her objection, Smith observes that the Driver Privacy Act defines "motor vehicle records" in part to include "licenses issued or revoked by the department relative to motor vehicles and the information, including personal information,

---

[3] Smith alternatively argues that the term "department record" includes everything that is a "motor vehicle record" under the statute, and that, since a driver's license is a "motor vehicle record" regardless of whose possession it is in, it is also a "department record" regardless of whose possession it is in. Because the court concludes below that a driver's license in the possession of the person to whom it pertains is not a "motor vehicle record" under the Driver Privacy Act, <u>see</u> Part III, <u>infra</u>, the court rejects Smith's alternative argument.

[4] Given the court's conclusion that Smith failed to plausibly allege Home Depot disclosed information from a "department record" in violation of RSA 260:14, IX(a), it need not consider Home Depot's alternative arguments that The Retail Equation is not an "unauthorized person" under paragraph IX(a) or that Home Depot did not act knowingly.

11

contained in them." RSA 260:14, I(a). Despite Smith's observation, however, the court is dubious of the proposition that a driver's license in the possession of the person to whom it pertains is a "motor vehicle record" within the meaning of the Driver Privacy Act. Other provisions of the Act provide that "[p]roper motor vehicle records shall be kept by the department at its office." RSA 260:14, II(a); see also N.H. Code Admin. R. Saf-C 5602.01(a) ("Motor vehicle records are maintained at the Department of Safety, Division of Motor Vehicles, 23 Hazen Drive, Concord, NH."); 5602.02 ("Any authorized person requesting motor vehicle record information shall submit the appropriate form and payment prior to the department's release of information."). Further provisions require a representation "satisfactory to the department" that requested motor vehicle records will be used only for a statutorily-authorized purpose before such records may be disclosed. E.g., RSA 260:14, V(a). While the Driver Privacy Act generally prohibits the redisclosure of information within a record originally obtained from the department, see, e.g., RSA 260:14, VI(a), construing the statute as a whole, the more plausible reading is that the statutory phrase "motor vehicle records" includes only those "licenses" "kept by the department at its office." RSA 260:14, I(a), II(a).[5] The court does not agree with Smith that her own driver's license, kept in her possession, is a "motor vehicle record" as that phrase is used in RSA 260:14.

---

[5] This reading is all the more plausible when one considers that RSA 263:12, X already prohibits scanning, recording, retaining, or storing "personal information, as defined in RSA 260:14, obtained from any license," irrespective of whether the license was obtained from the department or an individual.

While this in and of itself is fatal to Smith's claim under paragraph IX(b), her claim fails for the additional reason that she does not plausibly allege that Home Depot sold, rented, offered, or exposed for sale her driver's license. As alluded to supra, the factual allegations in Smith's complaint are minimal. She alleges that she made non-receipted returns and purchased items using store credit at a Home Depot store in Concord, New Hampshire, over the last three years. While she also alleges that Home Depot "knowingly sold, rented, offered, or exposed for sale" the information contained within her license to The Retail Equation when she made these transactions, this mere parroting of RSA 260:14, IX(b) is not to be credited in a 12(b)(6) analysis. See Iqbal, 556 U.S. at 678 ("A pleading that offers . . . 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Even when reasonably construing the complaint's allegations in Smith's favor, the most that can be gleaned from her complaint is an allegation that Home Depot provided Smith's driver's license, or information from her driver's license, to The Retail Equation so that The Retail Equation could cross-reference her identification information against her prior shopping habits to determine the likelihood that a given transaction was fraudulent. It cannot be seriously contended from Smith's factual allegations that Home Depot's alleged disclosures amounted to a sale, a rental, or an exposure for sale of Smith's personal information. To Smith's credit, she does not advance such contentions in her objection to Home Depot's motion.

Smith does argue, however, that she plausibly alleged Home Depot "offered" her driver's license information to The Retail Equation. According to Smith, the Driver Privacy Act "prohibits a person from offering a motor vehicle record to another even if not in exchange for monetary gain." Doc. no. 15 at 14 (emphasis and quotation omitted). In support of her contention, she cites a definition of "offer" contained within Black's Law Dictionary, which provides that an offer is "[t]he act or an instance of presenting something for acceptance; specif., a statement that one is willing to do something for another person or to give that person something." Offer, Black's Law Dictionary (11th ed. 2019). Smith argues that Home Depot "offered" the personal information contained within her driver's license to The Retail Equation by retaining The Retail Equation's services and "then followed through on that offer by sending the information to" The Retail Equation. Doc. no. 15 at 14.

Smith misconstrues the statute. The flaw in Smith's argument is that it ignores the familiar principle of statutory interpretation under which a broader statutory term "takes on the more specialized character of its neighbors." Home Gas Corp. v. Strafford Fuels, Inc., 130 N.H. 74, 82 (1987) (explaining that this principle of statutory construction is also known as "noscitur a sociis"); accord 2A Shambie Singer, Sutherland Statutes and Statutory Construction § 47:16 (7th ed.) ("[O]rdinarily, the coupling of words denotes an intention that they should be understood in the same general sense."). While the term "offer" may have the meaning ascribed to it by Smith in other statutes, in RSA 260:14, IX(b) it appears in sequence with the statutory terms "sells, rents, . . . or exposes for sale." These terms

14

are indicative of a monetary transaction, not simply an exchange irrespective of financial gain. Construing the term "offers" by reference to the "more specialized character" of the words adjacent to it, the court concludes that RSA 260:14, IX(b) does not prohibit the mere disclosure or offer to disclose motor vehicle records. [Home Gas Corp.,](#) 130 N.H. at 82.

Because Smith's complaint alleges no more than mere disclosure of the information within her driver's license, she fails to state a claim under RSA 260:14, IX(b). Therefore, the court dismisses Count II of her complaint.

## CONCLUSION

Home Depot's motion to dismiss (doc. no. 11) is granted. The clerk of court is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 19, 2023

cc: Counsel of Record